IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JILLIAN WRIGHT                                                            PLAINTIFF

v.                                                CIVIL ACTION NO. 3:20-cv-376-HTW-LRA

HINDS COMMUNITY COLLEGE                                DEFENDANT

**ORIGINAL COMPLAINT**

COMES NOW, Jillian Wright ("Plaintiff") by and through counsel and presents her Original Complaint against Hinds Community College, as follows:

### I. PARTIES

1.1     Jillian Wright is an adult resident citizen of Hinds County, Mississippi.

1.2     Hinds Community College is a Mississippi Community College operating within the State of Mississippi and may be served with process by service upon its President at 608 Hinds Blvd, Raymond, Mississippi 39154, or in any other manner allowed by law.

### II. JURISDICTION AND VENUE

2.1     This Court has federal question jurisdiction under the American with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq., and the Family Medical Leave Act, 29 U.S.C. § 2601, et seq. Venue is proper in the Southern District of Mississippi, Northern Division, as the events giving rise to this lawsuit occurred in Hinds County, Mississippi.

### III. FACTS

3.1     On or around June 2011, Plaintiff began working for Hinds Community College ("Hinds") in Raymond, Mississippi. Hinds is a qualified employer under the Family Medical Leave Act and the American with Disabilities Act, as Amended. Plaintiff began her work at

Hinds as a Web Content Manager, and soon after her employment, she became the Director of Web Communications where she worked in excess of five (5) years.

3.2     On or around April 2017, Plaintiff joined the IT Department and became the Director of Data Architecture where she was to build a data warehouse to combine data sources across the college; worked with outside contractors to streamline data related to Hinds' student demographics, financial information and other data-driven objectives; and assisted departments in documenting their business processes in preparation for a new Enterprise Resource Planning system. Plaintiff's immediate supervisor in the IT Department was Mr. Hampton Shive, Associate Vice President for Business Services and Chief Information Officer.

3.3     Since before 2010, Plaintiff has had a longstanding problem with cervical pain in her neck.  She had an anterior cervical discectomy and fusion in 2010.  After this surgery, she had a recurrence of neck pain that radiated into her right shoulder and arm with tingling in her hand.  Plaintiff continued to seek medical attention for her neck pain, including epidural injections that provided only temporary relief.

3.4     Beginning around May 2017, Plaintiff again suffered neck pain, sharp pains radiating from her neck to her elbow, migraine headaches, and muscle spasms in her neck. Ultimately, after consultation with her physicians, the decision was made for Plaintiff to have a second neck surgery for a discectomy of two more cervical disc levels, removal of hardware from the previous surgery, and a fusion of three levels of vertebrae.

3.5     Plaintiff was qualified to take FMLA leave and completed the required paperwork for FMLA leave so that she could have leave for the second surgery on her neck and time to recover.  Hinds approved Plaintiff's leave under the FMLA.

3.6     In or around May 15, 2018, Plaintiff took leave under the FMLA to have the second surgery on her neck.  After the surgery, Plaintiff's condition worsened, and she took six weeks of leave to recuperate post-surgery.  In addition to the ongoing ailments, Plaintiff suffered weakness in her lower extremities and intense pain at the base of her skull, which caused frequent nausea.

3.7     On or around July 3, 2018, Plaintiff returned to work for two weeks but had to take additional FMLA leave because the complications with her surgery rendered her unable to work.  Plaintiff had fallen multiple times due to the weakness in her lower extremities.  She experienced burning sensations in the back of her head, neck, and shoulders as well as intense headaches.

3.8     When Plaintiff returned from FMLA leave in August 2018, Plaintiff had difficulty walking, bending, and lifting.  Plaintiff used a cane to help her walk and had a handicapped-parking sticker that allowed her to park closer to her office.  She had difficulty opening doors, climbing stairs, lifting, and bending in any direction.

3.9     Ms. Wright informed Mr. Shive and the Human Resources Department that she had difficulty walking across the parking lot and opening large doors to get to her office and climbing stairs to attend meetings on the second floor.  Hinds never addressed Ms. Wright's known limitations with her directly but moved her office into the hall outside of two heavy main doors and painted the handicapped parking spaces.

3.10    The day that Plaintiff returned to work, Mr. Shive told Plaintiff that "the culture of the IT department had changed significantly since May."  After Plaintiff's return to work, Plaintiff was not allowed to return to her prior job duties, including her prior data projects.  Mr. Shive refused to inform Plaintiff of the status of the ongoing work projects Plaintiff had

performed prior to her FMLA leave.

3.11    At Mr. Shive's direction and during Plaintiff's leave of absence, Hinds shifted Ms. Heather Smith from her position with Institute Research to the IT Department to fulfill Plaintiff's job duties, including data reporting.  Upon Plaintiff's return, Ms. Smith or some other non-disabled employee who had not taken FMLA leave continued to perform Plaintiff's data-related job duties.

3.12    Mr. Shive tasked Plaintiff with work duties that she had never before performed as the Director of Data Architecture, including helping accounting with credit card fees and accounts; regularly collecting and carrying hardware for the installation of credit card machines; regularly physically installing credit card machines across six (6) different campuses, the airport, the golf course, and the conference center; and collecting old credit and check machines.  The Plaintiff was also tasked with installing a POS system for the meat market on the Raymond campus.

3.13    After her return from FMLA leave, Plaintiff regularly emailed and texted Mr. Shive that the newly assigned work tasks, including the installation of credit card machines across multiple campuses, required her to bend and lift on a regular basis.

3.14    Plaintiff informed that this regular physical work hurt Plaintiff to the point where the pain had caused her to miss work.  On multiple occasions, Plaintiff requested that she not be required to perform these newly assigned work tasks, which regularly required bending and lifting.

3.15    Mr. Shive intentionally and willfully refused to reply to these emails and requests for reasonable accommodation throughout the remainder of Plaintiff's employment.

3.16    When Mr. Shive failed to respond to the email correspondence, Plaintiff informed

Mr. Shive verbally of her pain due to the newly assigned work tasks and that the meat market work made Plaintiff hurt and caused her emotional distress.

3.17    Mr. Shive always changed the subject when Plaintiff addressed her limitations, and when Plaintiff wrote about her limitations in the SharePoint weekly meeting notes, Mr. Shive erased her comments.

3.18    Even though the work exacerbated Plaintiff's pain and Plaintiff had to take additional days off of work due to the pain, Plaintiff performed the painful, newly assigned work tasks, despite her limitations.

3.19    On or around mid-February 2019, Mr. Shive stopped responding to most of Plaintiff's emails.  Plaintiff continued to alert Mr. Shive of her difficulties and to request relief.

3.20    Near the end of the fiscal year, Mr. Shive convinced Dr. Clyde Muse, President of Hinds Community College, and/or other decision makers to terminate Plaintiff's employment and not to renew her employment contract.

3.21    On or around May 6, 2019, Mr. Shive informed Plaintiff that her contract was not being renewed and her employment as the Director of Data Architecture was terminated.  Mr. Shive further instructed Plaintiff that she could apply for another position in a different department with a salary reduction of $25,000.

3.22    On May 11, 2019, Plaintiff received an official letter terminating her employment.  As a result, Plaintiff suffered damages, including loss of retirement benefits.  Plaintiff had to cash out her retirement account to support herself.

## CAUSES OF ACTION

### IV.
### FAMILY MEDICAL LEAVE ACT
### (INTERFERENCE)

4.1     Ms. Wright incorporates by reference the prior paragraphs as if fully set forth herein.

4.2     At all time relevant hereto, Hinds was an employer covered by the Family Medical Leave Act (FMLA) because it engaged in commerce or industry affecting commerce which employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks during the relevant time period.

4.3     At all times relevant hereto, Ms. Wright was an employee entitled to leave under the FMLA based on the fact that she was employed by Hinds for at least twelve months and worked at least 1,250 hours during the 12-month period prior to her seeking to exercise her rights to FMLA leave.

4.4     Plaintiff provided the required notice for leave under the Act.

4.5     In connection with Plaintiff's second neck surgery and for recovery time, Plaintiff took approved leave under the FMLA in May 2018 and again in June 2018.

4.6     After Plaintiff returned to work from her leave in August 2018, Hinds denied Plaintiff benefits to which she was entitled under the Act.  Hinds materially and substantially altered Plaintiff's job duties and did not restore her to an equivalent job position.

4.7     Rather, Hinds assigned Plaintiff completely new work tasks, including on a regular basis physically installing credit card machines across six (6) different campuses.  These new tasks required regularly bending and lifting of heavy objects.

4.8     Hinds also prevented her from performing the job duties as Director of Data Architecture that she had previously performed.

4.9     Plaintiff had no authority or autonomy over her prior work projects but was reduced in large part to performing manual labor on a regular basis.

4.10    As a result of Hinds' acts and omissions, Plaintiff was prejudiced, suffered extreme emotional distress and damages, including having to take additional unpaid leave due to the grueling nature of the new work tasks and loss in job status.

## V.
## FAMILY MEDICAL LEAVE ACT
## (RETALIATION)

5.1     Ms. Wright incorporates by reference the prior paragraphs as if fully set forth herein.

5.2     Plaintiff took approved leave under the FMLA and was protected under the FMLA.

5.3     Plaintiff suffered adverse employment actions. After Plaintiff's return to work, Mr. Shive assigned her new work tasks that caused her physical pain that Plaintiff had not previously performed and terminated Plaintiff's employment.

5.4     Hinds, including Mr. Shive, knew that these new assignments, including but not limited to physical installation of credit card machines on a regular basis, caused the Plaintiff to suffer pain and emotional distress. Mr. Shive intentionally assigned these new tasks to retaliate against Ms. Wright and to force her to quit her employment with Hinds. When Plaintiff refused to quit, Mr. Shive took steps to ensure Plaintiff's employment ended.

5.5     Hinds made the adverse employment decisions because Plaintiff took FMLA leave. Hinds also treated Plaintiff less favorably than other employees who had not requested leave under the FMLA.

5.6     As a result of Hinds' outrageous retaliatory conduct, Plaintiff has suffered and continues to suffer extreme economic and non-economic damages.

## VI.
## AMERICAN WITH DISABILITIES ACT, AS AMENDED
## (DISABILITY DISCRIMINATION)

6.1     Ms. Wright incorporates by reference the prior paragraphs as if fully set forth herein.

6.2     Ms. Wright filed an EEOC charge and an Amended EEOC Charge against Hinds alleging disability discrimination and retaliation under the American with Disabilities Act and has received the right to sue letter, attached hereto as Exhibit A.

6.3     At all times material hereto, Plaintiff was an employee, and Hinds as her employer was covered by and within the meaning of Title I of American with Disabilities Act, as Amended.

6.4     At all times material hereto, Hinds was an employer engaged in an industry affecting commerce with fifteen (15) or more employees for each working day in each of 20 or more calendar weeks during the relevant time period.

6.5     Ms. Wright is a qualified individual with a disability as that term is defined in the American with Disabilities Act, as Amended, and able to perform the essential duties of her job with or without reasonable accommodation. Ms. Wright's limitations did not prevent her from being qualified for her job or performing the essential job duties as Director of Data Architecture in a satisfactory level to meet Hinds' legitimate expectations.

6.6     Ms. Wright's neck condition is a physical impairment that substantially limits one or more major life activities, including but not limited to the major life activities of working, bending, and/or lifting.

6.7     Hinds was aware of Plaintiff's back impairment and limitations.

6.8     Hinds regarded Plaintiff's neck condition as a physical impairment that substantially limited one or more major life activities, including but not limited to the major life activities of working, bending, and lifting.

6.9     Hinds terminated Plaintiff's employment because of Plaintiff's disability and/or Hinds' perception of Plaintiff's disability.  Ms. Wright was replaced by a non-disabled person while on medical leave, and Hinds treated Ms. Wright less favorably than similarly situated non-disabled employees.

6.10    Ms. Wright continues to suffer economic and non-economic damages as a proximate result of Hinds' discriminatory conduct.

## VII.
## AMERICAN WITH DISABILITIES ACT, AS AMENDED
## (FAILURE TO ACCOMMODATE)

7.1     Ms. Wright incorporates by reference the prior paragraphs as if fully set forth herein.

7.2      Hinds hired Ms. Wright as the Director of Data Architecture.  As a result of the ongoing medical complications with Ms. Wright's neck, Ms. Wright became substantially limited in the major life activities of working, bending, and/or lifting.  Ms. Wright was qualified to perform the essential job duties as the Director of Data Architecture with or without reasonable accommodation.

7.3     Upon Plaintiff's return to work, Mr. Shive assigned Plaintiff to perform work tasks, which she had not previously performed, including but not limited to installing credit card machines across several campuses. These tasks required bending and lifting on a regular basis. These new tasks caused her great pain and resulted in her missing days of work.

7.4     After her return to work and intermittently throughout the rest of her employment with Hinds, Ms. Wright requested that she not have to perform the newly assigned work tasks that exacerbated her pain and caused her to miss days of work.

7.5     Hinds failed to engage in the interactive process with Ms. Wright despite knowledge of her limitations and failed to accommodate Ms. Wright's known limitations in violation of her rights, although Hinds could have reasonably accommodated Ms. Wright's known limitations without undue burden by allowing her to perform the job duties that she performed prior to her medical leave, not requiring regular lifting or bending, or otherwise.

7.6     Hinds, including Mr. Shive, ignored Ms. Wright's request for reasonable accommodation and discriminated against Ms. Wright in violation of her rights under the American with Disabilities Act, causing her to incur economic and non-economic damages as set forth herein.

## VIII.
## AMERICAN WITH DISABILITIES ACT, AS AMENDED
## (RETALIATION)

8.1     Ms. Wright incorporates by reference the prior paragraphs as if fully set forth herein.

8.2     Ms. Wright made a request for reasonable accommodation under the American with Disabilities Act, as Amended.

8.3     Ms. Wright repeatedly informed Mr. Shive that her newly assigned work tasks caused her pain and asked that she not have to perform these newly assigned tasks.

8.4     Ms. Wright also informed Mr. Shive and the Human Resources Department that she had difficulty walking across the parking lot and had difficulty opening large doors to get to her office and climbing stairs to attend meetings on the second floor.

8.5     Ms. Wright also requested as an accommodation that she be able to substitute leave time with other employees, as Hinds allows other employees to do, and was denied.

8.6     Plaintiff had a good faith belief that she was disabled due to her known limitations as to working, bending, and lifting, including her inability to perform her newly assigned work tasks without great pain and additional unpaid leave from work, her cane use of a cane, and her difficulty accessing large doors.

8.7     After Plaintiff made requests for reasonable accommodation, Hinds and Mr. Shive ignored Plaintiff's pleas for accommodation, never allowed her to work on data, continued to insist that on a regular basis she perform arduous tasks in light of her disability and ultimately terminated her employment.

8.8     A nexus or causal connection exists between Hinds' retaliatory conduct and Plaintiff's requests for reasonable accommodation.

8.9     Ms. Wright continues to suffer economic and non-economic damages as a proximate result of Hinds' retaliatory conduct.

## IX.
## PUNITIVE DAMAGES

9.1     Hinds' conduct towards Ms. Wright as described herein demonstrates a willful and malicious wrong and gross and a reckless disregard for Ms. Wright's rights.  It was so

egregious that punitive damages should be assessed because of the totality of the circumstances of Hinds' conduct.

## X.
## DAMAGES

10.1 **Lost Wages/Benefits.** Ms. Wright lost wages and lost benefits since her termination and as well as lost future wages. She also incurred additional medical costs for physical therapy due to the newly assigned job duties, as described above.

10.2 **Loss of Earning Capacity.** Due to the conduct of Hinds, Ms. Wright's earning capacity has been diminished due to her inability to find work and the loss of opportunity to increase her salary and position in the workforce.

10.3 **Emotional Distress.** As a result of the malicious, intentional, outrageous, reckless, and unjust termination of Ms. Wright by Hinds, Ms. Wright has been damaged in her inability to get a comparable position and meet her obligations to her family and has been severely embarrassed in the industry she worked in. Ms. Wright has suffered extreme emotional distress. Ms. Wright is entitled to damages for emotional distress in an amount to be determined by the jury.

10.4 **Punitive Damages.** As a result of the intentional, willful, and malicious conduct of Hinds and/or its gross and reckless disregard of Ms. Wright's rights and in order to serve as an example and to prevent other such future conduct, Ms. Wright is entitled to punitive damages against Hinds based on Hinds' net worth and other factors as instructed by the Court in an amount to be determined by the jury.

**WHEREFORE, PREMISES CONSIDERED,** Ms. Wright demands judgment against Hinds in this matter for compensatory and punitive damages, plus attorneys' fees, legal expenses, court costs, prejudgment interest, and post-judgment interest. Ms. Wright requests a jury trial.

This the 2nd day of June, 2020.

                                                Respectfully submitted,

                                                JILLIAN WRIGHT

                                                By: */s/ E. Taylor Polk*
                                                       E. Taylor Polk

OF COUNSEL:
Michael A. Heilman (MSB No. 2223)
E. Taylor Polk (MSB No. 103653)
Daniel J. Hammett (MSB No. 105500)
HEILMAN LAW GROUP, P.A.
Meadowbrook Office Park
4266 I-55 North, Suite 106
Jackson, Mississippi 39211
Telephone: (601) 914-1025
Facsimile: (601) 944-2915
mheilman@heilmanlawgroup.com
tpolk@heilmanlawgroup.com
dhammett@heilmanlawgroup.com